# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1687

———————

Sandra D. Fanning,                     *
                                       *
            Appellant,                 *
                                       *    Appeal from the United States
    v.                                 *    District Court for the
                                       *    Eastern District of Arkansas.
John E. Potter, in his official capacity *
as Postmaster General of the United    *
States Postal Service,                 *
                                       *
            Appellee.                  *

———————

Submitted: March 10, 2010
    Filed:   August 6, 2010 (Amended: 09/30/2010)

———————

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Sandra Fanning appeals the decision of the district court[1] granting summary judgment for the United States Postal Service ("USPS"), her former employer. Fanning's complaint alleged that the USPS breached a settlement agreement entered into by the parties in 2003 after Fanning suffered an on-the-job injury, that it retaliated against her for filing administrative complaints of employment discrimination, and

———————

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

that USPS conspired to commit both of these wrongs. The district court granted summary judgment on these claims, and it also ruled that Fanning had failed to plead a claim of discrimination on the basis of race, color, sex, and disability. We affirm.

I.

Fanning began to work for the USPS in 1995. In April 2000, she was assaulted by another postal employee. In the wake of the assault, Fanning filed an employment discrimination suit in December 2000, naming as defendants the USPS, the American Postal Workers Union AFL-CIO, and the postal employee who had assaulted her. The parties entered into a settlement agreement in November 2003. Fanning also filed claims with the Office of Workers' Compensation Program ("OWCP"), a disability compensation program administered by the Department of Labor, for injuries suffered as a result of the assault and for post-traumatic stress. OWCP accepted both claims, over USPS's objections. Fanning ceased reporting for duty at the USPS after OWCP accepted her claims. Her last day in pay status as a Postal Service employee was September 8, 2000.

Fanning has remained on OWCP's periodic rolls since leaving her position with the USPS. She receives social security benefits in addition to her OWCP benefits, for a total monthly income of $5,310.52 and an annual income of $63,726.24. Until she was administratively separated from the Postal Service in December 2006, Fanning also received approximately $1200 per year in health benefit refund payments from the USPS.

Some of the health benefit refund payments were untimely. Based on the delay in those payments, Fanning filed an administrative complaint, known as an equal employment opportunity ("EEO") complaint, with the Postal Service in January 2006, alleging discrimination on the basis of race, color, sex, and disability, and retaliation for prior EEO activity. At Fanning's request, her complaint was transferred to the

Equal Employment Opportunity Commission for consideration by an Administrative Judge ("AJ"). *See* 29 C.F.R. § 1614.108(f). The AJ found that the USPS did not discriminate against Fanning. Fanning filed a second EEO complaint in April 2007, again alleging discrimination and retaliation, this time in her administrative separation from the USPS and the accompanying cancellation of her health insurance. Fanning requested a final determination by the USPS rather than consideration by an AJ, and the USPS determined that it had not discriminated against her.

The present lawsuit, filed on December 14, 2007, followed the adverse resolution of Fanning's EEO complaints. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Fanning. *See Genosky v. Minnesota*, 244 F.3d 989, 992 (8th Cir. 2001).

II.

A.

Fanning alleges that the USPS breached the 2003 settlement agreement in three different ways. First, she argues that the USPS violated a provision in which it "agree[d] not *to challenge* the legitimacy of Fanning's currently accepted OWCP claim or to provide the independent medical examination records and report of Dr. Diner to the Department of Labor." (Settlement Agreement ¶ 7) (emphasis added). She says that the USPS breached this provision when several USPS employees conducted an e-mail discussion in May and June 2005 about whether Fanning might be a candidate for vocational rehabilitation. This internal e-mail discussion led to no official action, and Fanning admitted that it did not affect her OWCP claim. (App. 410). She maintains, however, that it constituted a breach of the agreement because "the employees certainly wanted to affect [her] claim."

We agree with the district court that these e-mails did not breach the agreement. The key term in the settlement agreement is "challenge." In this agreement, the term "challenge" has a specialized meaning, and we must apply that meaning to evaluate Fanning's claim of breach. *See Les-Bil, Inc. v. Gen. Waterworks Corp.*, 511 S.W.2d 166, 170 (Ark. 1974).[2]

The portion of the USPS handbook governing "controversion and challenge" provides that the USPS may "challenge" a claim for injury compensation by "disputing any aspect of a claim . . . or disputing the entire claim for either a traumatic injury, occupational disease or illness, or survivor benefits." (USPS Handbook EL-505, *Injury Compensation*, § 8). Section 8.3 details instructions on how to prepare the "challenge package," and emphasizes the importance of ensuring that the package submitted to OWCP is "carefully prepared and well-documented." (*Id.* at 122). There is no evidence that the USPS ever sent a challenge package to OWCP regarding Fanning's claim after the signing of the settlement agreement, and Fanning has admitted as much. (*Id.* at 406). Nor is there evidence that anyone at the USPS sent or otherwise communicated the substance of Fanning's medical records to the Department of Labor. The USPS thus did not "challenge" the legitimacy of Fanning's OWCP claim or "provide" her medical records to the Department. Accordingly, the USPS did not violate its obligations under paragraph 7 of the settlement agreement.

Fanning also contends that the USPS breached paragraph 10 of the agreement, in which it agreed that "[d]uring the time that Fanning's disability retirement

---

[2]"Settlement agreements are generally construed according to the principles of contract law." *Myers v. Richland County*, 429 F.3d 740, 749 (8th Cir. 2005). Contract interpretation ordinarily is a matter of state law, *see Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989), and neither party contests application of the law of Arkansas, which is the locus of Fanning's employment, the State in which she resides, and the forum for this action. *Cf. Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010).

application is pending and during the reconsideration, if any, of a decision on Fanning's disability retirement application, Fanning will remain in the same employment status that she is in now, on leave without pay." (Settlement Agreement ¶ 10). Another provision of the agreement provided that "Fanning will look into applying for disability retirement and other options available to her." (*Id.* ¶ 9). Fanning concludes from these two provisions that if she chose *not* to apply for disability retirement, then she was permitted to remain *indefinitely* in leave without pay status. The USPS, she says, breached the agreement by administratively separating her in 2006.

The USPS understood its obligations differently. After Fanning's physician declared her permanently and totally disabled in the summer of 2005, the USPS – following its standard internal procedure governing employees who have been in leave without pay status for over a year – began the process of administratively separating Fanning from its rolls. (*See* USPS Handbook EL-505, *Injury Compensation*, § 4.22). In November 2005, a USPS human resources specialist sent Fanning a letter informing her that she appeared to be eligible for disability retirement and advising her how to pursue that option. Fanning took no action. On September 28, 2006, the USPS issued Fanning a Notice of Administrative Separation, which became effective on December 23, 2006. Fanning applied for disability retirement on December 27, 2007, and her application was approved on June 12, 2008.

We think the settlement agreement unambiguously resolves this contention against Fanning. No provision in the agreement required the USPS to keep Fanning on its payroll indefinitely. The USPS was bound not to change Fanning's employment status during the pendency of her application for disability retirement, and it did not do so. Instead, it followed proper procedures in separating her after she had been absent from duty for several years and a doctor declared her permanently disabled. This action did not interfere whatsoever with Fanning's subsequent (and

successful) application for disability retirement benefits. The USPS's administrative separation of Fanning did not breach the agreement.

Finally, Fanning asserts that the USPS breached the settlement agreement when it was late in issuing seven of her health benefit refund payments. But Fanning does not cite any provision of the agreement that governs the timing of these payments or indeed that addresses the making of these payments at all. The delay in the issuance of some payments does not constitute a breach.

B.

Fanning also claims that the USPS retaliated against her for engaging in protected EEO activity, in violation of Title VII. *See* 42 U.S.C. § 2000e-3(a). The district court properly analyzed this claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but because the record was fully developed on the motion for summary judgment, we address directly whether Fanning has presented a genuine issue of fact for trial on the ultimate question of discrimination *vel non*. *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009). To make a submissible case, Fanning was required to present sufficient evidence for a jury to find that her participation in protected activity was a determinative factor in USPS's decisions to take adverse employment action against her. *See* § 2000e-3(a); *Van Horn v. Best Buy Stores*, 526 F.3d 1144, 1148 (8th Cir. 2008).

The first retaliatory action that Fanning alleges is the USPS's attempt at terminating her OWCP benefits. As discussed, however, there is no evidence that the USPS took any action to terminate Fanning's OWCP benefits, and this was an internal discussion to which Fanning was not privy at the time. Fanning herself acknowledges that the internal e-mail exchange on which she relies had no effect on her OWCP

claim. We therefore conclude that this theory lacks a materially adverse employment action on which a retaliation claim might be predicated.

The second alleged retaliatory action is the USPS's failure to provide Fanning with timely benefits. The parties agree that seven of Fanning's health benefit refund payments were issued late, but there is no suggestion that any of the payments failed to reach Fanning altogether. Fanning contends that the delay alone "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted), and that the failure of USPS to make timely payments was thus a materially adverse action that could support a retaliation claim under Title VII.

We are not convinced that an objectively reasonable employee would find the occasional delay in receipt of less than two percent of her monthly income to be a serious hardship that would dissuade her from making a charge of discrimination. *Cf. id.* at 72-73 (holding that an employee who was suspended for 37 days without pay suffered a materially adverse employment action, because "the physical and emotional hardship" of the period during which she was not receiving a paycheck might well deter a reasonable employee from pursuing a discrimination complaint). Fanning was receiving payments from OWCP and Social Security Disability, totaling $5,310.52 per month and $63,726.24 per year. The quarterly $300 health benefit refund payments provided only a very small amount of additional income, and brief delays in receipt do not rise to level of a materially adverse action.

Finally, Fanning contends that her administrative separation from the USPS was a retaliatory action. To establish a retaliation claim, however, Fanning must demonstrate that there is a causal connection between the materially adverse employment action by USPS and Fanning's protected conduct. *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007). Fanning has offered no evidence that the USPS's decision to separate her administratively was connected to her previous EEO filings.

USPS policy provides for the administrative separation of employees absent from duty for one year because of illness, unless there is a likelihood that the employee will recover within a reasonable amount of time. "[W]hen medical documentation supports permanent total disability, i.e., the employee will never be able to return to work in any capacity," then agency policy calls for administrative separation. (*See* USPS Handbook EL-505, *Injury Compensation*, § 4.22). By the time that Fanning's separation became effective on December 23, 2006, she had been on leave without pay for *over six years*, and her physician had advised at least four times that she was permanently and totally disabled and would never be able to return to work. There was an obvious legitimate, non-discriminatory reason for the administrative separation, and Fanning has not presented evidence to demonstrate that this reason was a pretext for unlawful retaliation. The district court properly dismissed the retaliation claim.

## C.

Fanning next argues that the district court erred in finding that she failed to properly plead a claim of discrimination on the grounds of race, color, sex, and disability. She does not dispute that her complaint filed in the district court lacked an allegation of discrimination, but she argues that the assertions of discrimination in her EEO complaints were sufficient to bring those claims before the district court as well. She also argues that because both parties addressed the issue of discrimination in their briefs on the motion for summary judgment in the district court, her complaint was constructively amended to include that claim.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is not a demanding standard, but "[a] pleading incorporating allegations from other documents must clarify which statements are to be incorporated." *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984). Merely attaching documents

filed in a different proceeding, alleging claims that are mentioned nowhere in the complaint, does not pass muster. Nor is this case suitable for application of Rule 15(b)(2), which provides for an issue not raised in the pleadings to be tried by the parties' express or implied consent. The parties did not squarely address the claim in their summary judgment briefs. *Cf. Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663-64 (7th Cir. 1998). To the contrary, the USPS addressed Fanning's discrimination claim only to argue that she had *withdrawn* that claim by failing to plead it, and to request that if the district court permitted her to amend her complaint to include this claim, then the USPS should be allowed to submit supplemental briefing. (App. 57-59). There was no consent by the USPS to treat the discrimination claims as if they were actually pleaded.

Finally, Fanning argues that the district court erred in dismissing her claim that the USPS conspired to deprive her of OWCP benefits. We are at a loss to understand how the USPS could conspire with itself or with its employees, *see Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 407 (Ark. 2002); *Dodson v. Allstate Ins. Co.*, 47 S.W.3d 866, 876 (Ark. 2001), but we pretermit discussion of the merits, because we agree with the district court that Fanning failed to exhaust her administrative remedies. She did not include this conspiracy claim in her administrative complaints. *See McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995).

The exhaustion requirement may be satisfied if the civil claim "grows out of or is like or reasonably related to the substance of the allegations in the administrative charge," *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation omitted), but the civil suit can be only "as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000). Fanning's administrative complaints alleged that USPS discriminated by delaying the payment of her health benefit refund and by administratively separating her from employment. Even if we interpret Fanning's complaints "with the utmost

liberality," *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988), we do not see how the EEOC could reasonably be expected to undertake investigation and conciliation of a claim based on deprivation of OWCP benefits when Fanning referred only to health benefits and administrative separation in her administrative complaints. We therefore conclude that the conspiracy claim was not exhausted.

*        *        *

The judgment of the district court is affirmed.

_____