# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2446

_____

| | | |
|---|---|---|
| Naketa C. Malone, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Ameren UE, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 16, 2011
Filed: July 18, 2011

_____

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Naketa Malone sued his employer, Ameren UE ("Ameren"), alleging race discrimination and retaliation for opposing race discrimination, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* The district court[2]

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

granted Ameren's motion for summary judgment and dismissed the complaint. Malone appeals, and we affirm.

I.

We recite the facts in the light most favorable to Malone. Malone, who is a black male, worked for Ameren or its predecessor since September 1989. He held various positions in operations and maintenance at Ameren's Meramec Plant, a coal power plant in St. Louis County, Missouri. In 2003, Ameren rejected Malone's application for a promotion to a "Shift Supervisor I" position because he lacked experience as a "Unit Operating Engineer." Malone later learned that Ameren hired others without such experience to serve in the Shift Supervisor I position. In 2006, Malone applied again for the position, but later withdrew his application. In 2007, Ameren promoted Malone to Unit Operating Engineer.

Malone contends that during his time at the Meramec Plant, the environment became "toxic" as a result of several racially-motivated incidents. The first incident, in August 2005, occurred when Malone entered a men's restroom stall and viewed graffiti written by an unknown author that said, "Kill all niggers." Malone reported the graffiti to his immediate supervisor, and the graffiti was covered.

In August 2006, three white employees told a racially-oriented joke to a black outside contractor. Malone was not present and does not know the substance of the joke. Pursuant to its Equal Employment Opportunity and Anti-Harassment Policy, Ameren suspended the three employees without pay. The local union representing these suspended employees then solicited money to support the employees and publicly displayed the amount collected. Malone was offended that Ameren did not somehow stop the union from taking these actions.

In the spring of 2007, an Ameren employee used the term "nigger rigged" to refer to repairs performed on machinery. Malone was not present, but learned of the statement through a co-worker. Ameren suspended the offending employee without pay after determining that his actions violated company policy.

Finally, in December 2007, during Malone's first shift as a Unit Operating Engineer, he observed alarms indicating a problem with a boiler feed pump for which he was responsible. Malone dispatched his attendant and learned that a valve on the pump was completely closed. Based on this information, Malone concluded that someone had forcibly closed the valve in an attempt to sabotage the equipment because of Malone's race. After an investigation, Ameren concluded that the valve most likely closed on its own due to extreme vibration.

Following this event, Malone was diagnosed with "adjustment disorder mixed with anxiety." At Ameren's request, Malone met with a psychiatrist. The psychiatrist concluded that Malone was not fit for work, because he exhibited agitation, possible paranoia, possible auditory hallucinations, and questionable insight and judgment. Malone never returned to work.

In 2008, Malone filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right-to-sue letter. Malone sued Ameren in the district court, alleging race discrimination and other claims not relevant here.[3] His complaint alleged claims of race discrimination and retaliation based on a failure to promote, and a race discrimination claim based on a hostile work environment. The district court granted summary judgment in favor of Ameren on each of these claims.

---

[3]Malone's complaint also alleged sex discrimination under Title VII and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court dismissed these claims for failure to exhaust administrative remedies, and Malone does not appeal that aspect of the judgment.

II.

Before addressing the merits of Malone's claims, we consider two disputes about discovery and admissibility of evidence. Malone asserts that the district court abused its discretion by refusing to consider three affidavits when ruling on Ameren's motion for summary judgment. Citing Federal Rule of Civil Procedure 37(c)(1), the district court declined to consider the affidavits because Malone had not identified the witnesses as required by Rule 26(a) or (e), and did not explain why his failure to do so was substantially justified or harmless. Malone does not offer a justification for the lack of notice; he asserts only that Ameren would have been able to prepare for the witnesses if they were to testify at trial. For purposes of summary judgment, however, Ameren had no opportunity to depose the witnesses, and the district court was not required to delay the proceedings to accommodate Malone's untimeliness. The district court did not abuse its discretion by excluding the affidavits. *See Fu v. Owens*, 622 F.3d 880, 883-84 (8th Cir. 2010).

Malone next contends that the district court "short circuited" discovery by forbidding him to present information concerning a prior lawsuit between Ameren and several employees including Malone. That action resulted in a confidential settlement in 2002. The district court's order provided that Malone was "prohibited from asking questions regarding the February 2002 Settlement Agreement between [Malone], several other charging parties, and [Ameren]." This sort of discovery ruling will be reversed only for gross abuse of discretion resulting in fundamental unfairness. *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 637 (8th Cir. 2007). Given the remoteness in time of the prior events, the limited probative value of the proposed discovery, and the potential that discovery could have compromised the confidentiality of the settlement, the district court did not abuse its discretion in concluding that discovery concerning the settlement agreement was not warranted. *See* Fed. R. Civ. P. 26(c)(1); *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 457-62 (N.D.N.Y.), *aff'd*, 190 F.R.D. 42 (N.D.N.Y. 1999).

III.

On the merits, we review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Malone, the nonmoving party. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

We first consider Malone's claims of discrimination and retaliation based on a failure to promote. Analyzing these claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the district court determined that Malone failed to establish a *prima facie* case of discrimination. Because the record was fully developed in connection with Ameren's motion for summary judgment, we address directly whether Malone has presented a genuine issue for trial on the ultimate question of discrimination *vel non*. *See Fanning v. Potter*, 614 F.3d 845, 850 (8th Cir. 2010).

The district court properly granted summary judgment on both failure-to-promote claims. Before an employee may file a lawsuit in federal court, he must exhaust administrative remedies with the EEOC. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). The employee may not bring allegations in a Title VII action if they go beyond those that "could reasonably be expected to grow out of the charge of discrimination" filed with the EEOC. *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000) (internal quotation omitted). While a charge of discrimination "need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009) (internal quotation omitted).

In his charge of discrimination to the EEOC and in his complaint, Malone alleged that Ameren refused to promote him to "a supervisory UOE position" in 2007. The record shows, however, that Ameren did promote Malone in 2007. At his deposition, Malone testified that he identified the wrong date in his allegations, and that the charge of discrimination should have referred to his application for a Shift Supervisor I position in 2003. Malone's EEOC charge about an alleged failure to promote involving a different position in a different year was insufficient to exhaust his administrative remedies. On top of the exhaustion problem, it is too late now for Malone to amend his complaint to include a different alleged act of discrimination. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). The failure-to-promote claims were properly dismissed.

B.

Malone's remaining claim is that Ameren subjected him to a hostile work environment based on race. To prove this claim, Malone must establish that (1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). Ameren can be liable for harassment by non-supervisory coworkers only if the company "knew or should have known of the harassment and failed to take proper remedial action." *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

Conduct of others in a workplace "affects a term, condition, or privilege of employment" under Title VII only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). We consider the conduct "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Singletary*, 423 F.3d at 892

-6-

(internal quotations omitted); *see also Harris*, 510 U.S. at 21-22. All of the circumstances are relevant, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Malone presented evidence of four incidents in support of his claim: (1) the restroom graffiti in August 2005; (2) the racially-oriented joke in August 2006 and the union's collection in support of the suspended employees; (3) the racially-derogatory reference to repairs in the spring of 2007; (4) and the alleged sabotage in December 2007. These incidents, considered as a whole, are not sufficiently severe or pervasive to establish a hostile work environment. The events occurred over the span of more than two years, and "our cases require that a plaintiff show more than a few occurrences over a course of years." *Singletary*, 423 F.3d at 893. The first three incidents were not directed at Malone; the second and third incidents occurred outside of Malone's presence; and there is no evidence that the alleged sabotage had a racial character or purpose if it was even sabotage. The district court thus properly granted summary judgment in favor of Ameren on this claim.

\* \* \*

The judgment of the district court is affirmed.

_____