# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2609

_____

Michael Woods,

*Plaintiff - Appellant,*

v.

Douglas A. Collins,[1] Secretary of Veterans Affairs,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 10, 2025
Filed: August 29, 2025

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

COLLOTON, Chief Judge.

Michael Woods, a black employee of the United States Department of Veterans Affairs, sued the Secretary and alleged employment discrimination under Title VII

---

[1]Secretary Collins is automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

of the Civil Rights Act. The district court[2] granted summary judgment for the Secretary. Woods appeals, and we affirm.

I.

Woods began working as a program support assistant in the VA Office of Community Care in September 2019. He was supervised by Angela Frey and Stephanie Rodriguez. According to Woods, he began to experience conflicts with Frey and Rodriguez shortly after he started. They allegedly failed to provide him with adequate training to perform certain job responsibilities, assigned him tasks outside the scope of his responsibilities, and erroneously charged him as absent-without-leave on several occasions. Woods also claims that Frey and Rodriguez pressured him to write a false report about the performance of another black employee, Georgette Sherman, and denied his requests to work from home during the early months of the COVID-19 pandemic while permitting a similarly-situated white employee to do so.

In June 2020, Woods went to the VA hospital on personal business. He attempted to get a protective mask from a COVID-19 screening tent outside the building. An employee at the tent denied Woods's request, explaining that he was a VA employee and should have received a mask from his supervisor. Woods and the other employee became embroiled in a verbal altercation, and she made a "behavior health response" request to the VA police department.

According to the responding officer's incident report, the tent employee stated that she called for assistance after Woods raised his voice at her; Woods denies that allegation. After a short conversation with the officers, Woods left the property

---

[2]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

without further incident. The officer noted in his report that while he was speaking to Woods, another VA employee approached the screening tent without a mask and was given one without question. Woods claims that he later attempted to talk to Frey about this incident—which he viewed as discriminatory—but that "she told him to get out of her office, she was afraid of him, didn't want to hear any more, and that there was no race discrimination at the VA."

Woods filed an administrative complaint of employment discrimination on July 28, 2020, alleging that he had suffered harassment, a hostile work environment, and retaliation for an employment complaint that he had filed "many years" earlier when he worked in a different department.

Woods received his first annual evaluation from Frey in November 2020. Frey rated Woods's performance as "unacceptable," the lowest possible rating. Woods disputes this rating. He claims that he was insufficiently trained, that he was assigned responsibilities outside his job description, and that Frey failed to follow VA performance improvement procedures before issuing the negative rating.

On February 23, 2021, Frey drafted a memorandum proposing a suspension for Woods based on three instances of inappropriate conduct—the June 2020 incident at the COVID-19 screening tent and two incidents in October 2020 and February 2021 where he yelled at his manager—and six instances of failure to print and mail letters to veteran patients. Woods acknowledged receipt of the proposed suspension on March 4, 2021, and was ultimately suspended for five days in April 2021. He claims that the employer placed him on a performance improvement plan when he returned to work.

Also in February 2021, Woods was assigned to work at a COVID-19 screening tent outside of the office during the investigation into his workplace conduct. He

claims that Frey instructed the screening tent personnel to assign Woods to the afternoon-to-evening shift, rather than his normal morning-to-afternoon shift.

Woods also alleges several instances when Rodriguez and Frey were rude or disrespectful to black employees. For example, he asserts that early in his tenure at the Office of Community Care, Rodriguez told him that he needed to "play along" if he wanted to "move[] up the pay scale." When Woods asked what she meant by "play along," she told him "don't be like that other one," (allegedly referring to a black employee who previously held Woods's position), and blew cigarette smoke in Woods's face. He also cites testimony from Sherman that Frey "singled [her] out in meetings" and "would talk down to [her]" like she was "uneducated." Woods also avers that he witnessed Frey interrupt Sherman while she was speaking in a meeting and tell Sherman to sit down.

Woods filed another administrative complaint in May 2021 that alleged harassment, discrimination, and retaliation. He later brought this action under Title VII, claiming race discrimination and retaliation for engaging in protected activity. *See* 42 U.S.C. § 2000e-2(a)(1), -3(a).

The district court granted summary judgment for the Secretary. Woods appeals his claims of disparate treatment, exposure to a hostile work environment, and retaliation. We review the district court's rulings *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Woods. *Hester v. U.S. Dep't of Treasury*, 137 F.4th 684, 688 (8th Cir. 2025). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Woods first challenges the district court's ruling on his disparate treatment claim. A plaintiff alleging race discrimination in employment by disparate treatment must prove that he suffered an adverse employment action and that race was a motivating factor for the action. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024); *Washington v. Am. Airlines, Inc.*, 781 F.3d 979, 981 (8th Cir. 2015). A plaintiff who does not present direct evidence of disparate treatment proceeds in the district court through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). On appeal, where the record is fully developed on a motion for summary judgment, we may turn directly to the question of discrimination *vel non*. *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

Woods first argues that his "unacceptable" performance appraisal in 2020 supports a claim of unlawful discrimination. He fails, however, to establish that the appraisal was adverse employment action. Under Title VII, a plaintiff must show "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354-55. But Woods points to no evidence that his 2020 appraisal was used as a basis for a reduction in pay, transfer, or other change to a term or condition of his employment. He has not created a genuine issue of fact on whether the negative appraisal caused some harm respecting an identifiable term or condition of his employment. *See id.*; *Martinez-Medina v. Rollins*, 144 F.4th 1091, 1096 (8th Cir. 2025).

Woods next cites Frey's denial of his request to work from home during the early months of the COVID-19 pandemic. He argues that a similarly-situated white employee was allowed to work remotely while he was not. To establish an inference of race discrimination based on disparate treatment of an employee of a different race, a plaintiff must show that the comparator employee is "similarly situated in all

-5-

relevant respects." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1051 (8th Cir. 2011) (en banc) (internal quotation omitted).

To work from home during the pandemic, agency employees were required to submit a completed telework agreement. Although Woods testified that he submitted a completed agreement "by email" in April 2020, the earliest completed agreement in the record is dated July 10, 2020. Woods's unsupported allegation that he submitted the form months earlier is insufficient to support a finding in his favor. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). There is no evidence that the comparator employee was permitted to work from home without submitting a completed telework agreement. Frey also averred that she ordered a laptop for Woods after he submitted the completed telework agreement in July 2020, but that he refused to pick it up. This is a legitimate, nondiscriminatory explanation for why Woods was not issued a laptop after July 10, *see McDonnell Douglas*, 411 U.S. at 802, and he offers no evidence beyond conclusory allegations that the explanation was false or pretextual.

Woods also asserts that "only black employees were transferred out of [the Office of Community Care] and given menial jobs." But the evidence to which he refers does not support a conclusion that any other black employee was transferred or given a "menial job." His own work assignment at the COVID-19 screening tent in February 2021 is insufficient to support an inference that he was transferred due to his race.

Woods further argues that his suspension in April 2021 was motivated by race. The agency, however, offered a legitimate, nondiscriminatory explanation for the suspension: Woods's failure to mail patient letters on six days in February. Woods asserts in response that his access to the computer had been revoked and that someone else was tasked to mail out letters on those days, but these assertions are unsupported by record citations. There is insufficient evidence to support a finding that the

employer's explanation was pretextual, and the court properly dismissed Woods's disparate treatment claim.

## III.

Woods next contests the district court's rejection of his hostile environment claim. To establish a claim of a racially hostile work environment under Title VII, Woods must show that he was subjected to unwelcome harassment because of his race and that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Woods argues first that Frey and Rodriguez pressured him to write a false report about Sherman's performance. The only support for this claim is Woods's testimony that Sherman was not to blame for vaguely-defined payroll errors on unspecified dates, and an affidavit from another employee stating that she once witnessed Rodriguez tell Frey that Sherman "doesn't know what she's doing and needs too much help."

Woods also cites miscellaneous grievances about the work environment: his supervisors' alleged failures to train him and to provide him with certain office supplies; several instances when he was wrongfully charged as absent without leave between October 2019 and early 2021; and the instances of Frey and Rodriguez yelling at or disrespecting Woods and other black employees. These points do not further his claim because he offers little more than speculation and conjecture that the incidents had anything to do with race. *See Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1084-85 (8th Cir. 2010).

"The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Martinez-Medina*, 144 F.4th at 1098 (internal quotation omitted). The alleged actions, taken individually or collectively, were not so severe or pervasive as to "alter the conditions of the victim's employment and create an abusive working environment." *See id.* at 1097-98 (internal quotation omitted). The district court properly granted summary judgment for the Secretary on Woods's claim of hostile work environment.

IV.

Woods next challenges the district court's rejection of his retaliation claim. To establish retaliation for engaging in statutorily protected activity, a plaintiff must show that his participation in protected activity was a determinative factor in his employer's decision to take a materially adverse action against him. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Fanning v. Potter*, 614 F.3d 845, 850 (8th Cir. 2010). A retaliatory action is materially adverse if it produces an injury or harm that would likely dissuade a reasonable worker from engaging in protected conduct. *Burlington N.*, 548 U.S. at 67-68.

Woods asserts that his supervisors retaliated against him for three instances of statutorily protected activity: (1) his refusal to write a report against Sherman in January or February 2020; (2) his June 2020 complaint to Frey about racial discrimination after the incident when VA police were called on Woods; and (3) his July 2020 formal administrative complaint of discrimination. His proffered adverse actions are: (1) his "unacceptable" performance appraisal in November 2020; (2) his assignment to work in the COVID-19 screening tent in February 2021; (3) his placement on a performance improvement plan in April 2021; and (4) the instances in which he was charged absent without leave. Woods claims that the temporal

proximity of these actions to his engagement in protected activities raises an inference of retaliation.

On the first, even assuming that his negative performance appraisal was a materially adverse action, *cf. Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016), the agency offered a legitimate, nondiscriminatory explanation for the negative evaluation: that Woods failed to meet performance standards for his position. *See Fanning*, 614 F.3d at 851. Woods disputes the legitimacy of this rating. He claims that he did not receive adequate training for his timekeeping or note-taking responsibilities. But Woods admitted that his employer furnished him with computer-based training modules and reading materials that described how to perform timekeeping functions, and he points to no other specific training that he requested and did not receive. He also asserts that his supervisor failed to follow agency performance improvement procedures before issuing him a negative rating. Yet his appraisal reflects that he was offered an opportunity to discuss how to improve his performance at a mid-point review and declined to do so. Woods points to the positive performance reviews that he received in other years. But Woods admitted that he had never performed timekeeping functions before working in the Office of Community Care, and a positive rating in a later year could simply reflect improvement in his job performance. The evidence does not create a genuine issue of material fact as to whether the agency's proffered explanation for the performance review was pretextual.

Second, Woods's assignment to work in the COVID-19 screening tent in February 2021 and his designation in April 2021 for a performance improvement plan occurred more than seven months after his most recent protected activity. The actions are too far removed from the July 2020 formal complaint to support an inference of discrimination based on timing alone. *See Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 628 (8th Cir. 2025).

As to the instances in which Woods claims that he was "unfairly charged absent without leave," one occurred in October 2019, before any protected activity in 2020 and far removed from the employment discrimination complaint he filed "many years" earlier. Charges for absences in May 2020 and January 2021 each came at least three months after his then-most recent engagements in protected activity, so timing alone is insufficient to support an inference of retaliatory motive. *See id.* Woods describes several other alleged instances of leave disputes, but provides no dates on which they occurred, so they cannot support his claim. The evidence is insufficient to demonstrate a submissible case of unlawful retaliation.

\*     \*     \*

The judgment of the district court is affirmed.

_____