**UNITED STATES COURT OF APPEALS** October 12, 2010

**FOR THE TENTH CIRCUIT**

FRAN HOWELL,

      Plaintiff-Appellant,

v.

NEW MEXICO DEPARTMENT OF
AGING & LONG TERM SERVICES,
ADULT PROTECTIVE SERVICES
DIVISION,

      Defendant-Appellee.

No. 10-2020
(D.C. No. 6:08-CV-00937-BB-WDS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

In this employment discrimination case, Fran Howell appeals from a

district court order that granted summary judgment to her former employer, the

Adult Protective Services Division of the New Mexico Department of Aging &

Long Term Services (APSD).  She also seeks to proceed on appeal in forma

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pauperis (IFP).[1] We have jurisdiction under 28 U.S.C. § 1291, deny IFP status, and dismiss the appeal.

## BACKGROUND

For several years, Howell was employed as a social worker under the supervision of Matthew Thompson in New Mexico's Child Protective Services Division. In July 2005, Howell transferred to APSD to get away from Thompson, whose behavior she found "extremely harassing." R. at 272. She claims, however, that the harassment continued at APSD, as Thompson "interjected him self [sic] into [her] relationship with [her] Supervisor, [Karen] Allen." *Id.* at 274.

In January 2006, Thompson became APSD's regional manager, and once again had supervisory authority over Howell, who was then fifty-nine years old. According to Howell, Thompson continued harassing her by requiring her to provide a doctor's note with a diagnosis each time she missed work due to illness, insisting that she obtain prior approval to work outside of her normal hours, giving her a "Not Acceptable" rating on her employee development and appraisal form, *id.* at 311, threatening to issue a corrective action plan to improve her work and attendance, instructing her to perform work that she was not authorized to do, and utilizing "informants" to report on her activities, *id.* at 280.

---

[1] Although Howell filed this appeal pro se, she has since retained an attorney, who has filed a reply brief on Howell's behalf.

On June 14, 2006, APSD placed Howell on administrative leave while it investigated a report that she had threatened Thompson's life. Based on the investigation, APSD issued a termination notice on June 19, 2006, stating:

> Upon learning of [Thompson's] appointment [as APSD's regional manager], you [Howell] became angry and threatened to kill him. Over the past several months, you have repeated the threat on numerous occasions. Sometimes you have said you intend to shoot Mr. Thompson; at other times, you have said you intend to pour gasoline on him and set him on fire. You have communicated these threats to coworkers and others. As a result, Mr. Thompson has been placed in fear, and your coworkers have been placed in an untenable working environment.

*Id.* at 213. It is unclear whether this notice was delivered to Howell, as she submitted a letter of resignation several days later, explaining: "[Thompson] and I share an unrelenting, intensely negative relationship. I find ours are irreconcilable differences, which prevent my continuing employment under his direction and or supervision." *Id.* at 234.

Howell exhausted her administrative remedies, and ultimately sued APSD, advancing pro se claims of discrimination on the basis of age, gender, race, and religion, as well as a claim for retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. APSD moved for summary judgment, and deposed Howell. During her deposition, Howell testified that she believed Thompson disliked her because he "doesn't do well with older women," and he appeared to be intimidated by her "work experience," her "relationships

with some of the people who had made it up the corporate ladder," and her defense of clients. R. at 232.

Howell opposed summary judgment only as to age and gender discrimination,[2] and provided no clear indication whether she was pursuing hostile-work-environment and/or disparate-treatment theories. It appears, however, that the crux of her case was a hostile work environment. She sought to prove that Thompson created intolerable working conditions because he harbored discriminatory animus toward her. As proof, she relied on the following evidence: two witness telephone interviews conducted by the Equal Employment Opportunity Commission (EEOC); an unsigned, unauthenticated document purportedly written by one of her APSD supervisors, Bobby Robertson; a handwritten sheet entitled, "My Notes," *id.* at 326; and her employee development and appraisal form on which she received a negative score.

The district court granted APSD summary judgment, concluding that Howell's case boiled down to a "personality conflict" and employee performance issues. R. at 439. In doing so, the court noted that Howell's evidence was either unreliable and inadmissible, or simply not probative of illegal discrimination.

---

[2]     Howell did claim that Thompson once commented about "a person being 'out of favor with God,'" and that she found this "very disturbing and frightening." R. at 277. But she did not advance any sort of religious-discrimination argument. In any event, isolated distasteful remarks are not actionable under Title VII. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001).

-4-

The court also denied Howell's motion to proceed IFP on appeal, concluding that she had not identified a reasoned, nonfrivolous argument to appeal.

## DISCUSSION

Standards of Review

We review de novo the district court's decision to grant summary judgment. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In performing this analysis, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Garrison*, 428 F.3d at 935. Further, this court liberally construes a pro se party's pleadings. *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002). "However, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (quotations and brackets omitted).

Title VII - Hostile Work Environment

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . .

-5-

sex." 42 U.S.C. § 2000e-2(a)(1). "An individual can make a claim of sex discrimination based on a hostile work environment, but in order to do so, [she] must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Pinkerton*, 563 F.3d at 1058 (citation and quotation omitted).

To show that her working conditions under Thompson were the result of sex discrimination, Howell asserted in an affidavit that he made the following remarks: "Not just too blond, are you? Your [sic] also a real blond"; "[S]he is pretty dittsey [sic]"; "She can not [sic] change with the agency [because] she is too used to the feminine perspective"; and "a woman, especially an old woman [taking prednisone] . . . would/could be too much for this office." R. at 283. But at least two of these statements—"[S]he is pretty dittsey [sic]" and "She can not [sic] change"—appear to have been made by Thompson to third parties. It is well-established that a "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence." *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010). Howell does not indicate how she learned of those two statements or how they would be admissible.

Indeed, those statements are not mentioned in the exhibits she cites in her affidavit. And only one of the exhibits she cites even remotely supports her

-6-

larger contention that Thompson harbored discriminatory animus on the basis of gender. That exhibit is an EEOC report of a telephone interview with APSD employee Peggy Skinner. She told the interviewer that "Thompson did have direct animosity towards women and would get on [Howell] for nothing at all." *Id.* at 345. But both Skinner's statement and the interviewer's report of that statement are hearsay, *see* Fed. R. Evid. 802, and Howell does not address their admissibility. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 897 n.3 (10th Cir. 2009) (observing that hearsay is "inadmissible in a summary judgment proceeding"). Further, the report is unreliable, as nothing indicates how Skinner came to the conclusion that Thompson did not like women employees and would harass Howell for no reason. Moreover, one of the other exhibits that Howell cites is an EEOC report of a telephone interview with Howell's immediate supervisor, Julie Sursa, who stated that the problem between Thompson and Howell was "an employee supervisory issue more so than a discriminatory issue," as "[Howell] would not complete her work, would not call in as she was informed to, and would work when she wanted." *Id.* at 346.

While Sursa's statement and the EEOC report containing it share the same admissibility issues as the report with Skinner's statement, other evidence in the record suggests that the problem between Howell and Thompson was either a supervisory issue or a personality conflict. For instance, Howell's resignation letter states that she and Thompson "share an unrelenting, intensely negative

relationship" and that they have "irreconcilable differences." R. at 234. Howell's deposition testimony suggests that Thompson's motivations may have stemmed from his insecurity in supervising a "more . . . experience[d]" employee, *id.* at 232, rather than a dislike of female employees in general.

We conclude that a rational trier of fact could not find from the admissible evidence that the character of Howell's work environment was the result of sex discrimination. Accordingly, summary judgment was appropriate on Howell's sex discrimination claim.

ADEA - Hostile Work Environment

Under the ADEA, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Age discrimination can form the basis of a hostile-environment claim if (1) the employee was discriminated against because of her age; and (2) the discrimination created a workplace so permeated with severe or pervasive intimidation, ridicule, and insult, that it altered the employment conditions and created an abusive working environment. *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

To show discriminatory motive, Howell asserts that Thompson told APSD not to hire her because she was "too old and incapable of adapting to the new technologies and techniques," R. at 327, and that "[h]e want[ed] to get rid of he[r]

because she [was] too old to keep [up] with the work load," *id.* at 327. As supporting evidence, Howell again relies on the EEOC reports. But as discussed above, those reports are inadmissible, unreliable, and largely unhelpful to Howell. She also cites the unsigned document purportedly written by supervisor Robertson. But that document is not in the form of an affidavit or an unsworn declaration, *see* 28 U.S.C. § 1746, and "was not within the range of evidence that the district court could consider" on summary judgment. *DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457, 471 (7th Cir. 1990); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (holding that district court properly excluded "affidavits [that] lacked signatures and attestation before a notary public").[3]

Further, even if the Robertson document were in the proper form, part of the information it relates is based on hearsay statements of other individuals, and

---

[3]    Howell argues that the district court should have notified her of the proper form for affidavits before granting APSD's summary judgment motion. But she clearly knew how to submit a proper affidavit, as her own affidavit is signed, sworn and notarized. Further, in its district court reply brief, APSD argued that the Robertson document could not be considered as an affidavit because it was not in the proper form. Two months passed from APSD's filing of the reply brief until the district court entered summary judgment, but Howell did not attempt to supplement her summary judgment opposition or otherwise remedy the problems with the Robertson document. While a district court may abuse its discretion by refusing a pro se litigant's request to remedy defects in her summary judgment materials, *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985), Howell made no such request. Consequently, she was bound to "follow the same rules of procedure that govern other litigants." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quotation omitted).

would not be admissible in evidence. "To survive summary judgment, [the] nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence . . . ." *Skrzypczak*, 611 F.3d at 1244 (quotation omitted).

Howell also claimed that Thompson "has informants . . . in my work place who have absolutely NOT reported truthfully to him." R. at 282. But even if true, it is unclear how this suggests that Thompson harbored discriminatory animus. As supporting evidence, Howell cites her handwritten "My Notes" piece of paper and her negative employee appraisal. But not only are her notes inadmissible, neither exhibit elucidates this matter.

Finally, Howell claims that she has been blacklisted from further employment as a social worker, and that Thompson told managers at APSD that they should transfer to him any telephone calls seeking a job reference for her. She cites the Robertson document as support. But that document does not mention either topic.

Given the lack of admissible evidence of discriminatory motive, we conclude that a rational trier of fact could not find that the character of Howell's work environment was the result of age discrimination. *See Jones v. Okla. City Pub. Schs.*, No. 09-6108, 2010 WL 3310226, at *4 (10th Cir. Aug. 24, 2010) (reinforcing the rule that an employer cannot be held liable under the ADEA unless "age was the factor that made a difference" in its actions with the

employee (quotation omitted)).  Accordingly, summary judgment was appropriate on Howell's ADEA claim.

**CONCLUSION**

The motion for leave to proceed IFP is DENIED.  *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) (noting that IFP status requires not only a financial inability to pay the required filing fees, but also the existence of a reasoned, nonfrivolous argument on the law and facts).  This appeal is DISMISSED.[4]

Entered for the Court


Deanell R. Tacha
Circuit Judge

---

[4] To the extent Howell's Title VII and ADEA claims include a disparate-treatment component, she has not demonstrated that similarly situated employees outside of her protected classes were treated differently than she was. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149-50 (10th Cir. 2005) (Title VII); *See Jones*, 2010 WL 3310226, at *5 (ADEA).  As such, she cannot make out a prima facie case of discrimination.  Howell overlooks this point, and appears to jump ahead to the argument that APSD's reason for firing her was a pretext for discrimination.  Specifically, she denies threatening to kill Thompson.  But there is undisputed evidence that APSD relied on the results of the investigation when deciding to fire Howell.  "Evidence that the employer was mistaken is not sufficient to show that the employer's explanation is unworthy of credibility.  The relevant inquiry is whether it honestly believed those reasons and acted in good faith upon those beliefs."  *Orr*, 531 F.3d at 1218 (quotation and ellipses omitted).  There is no evidence that APSD did not honestly believe the results of the investigation or that it failed to act in good faith upon its belief.

-11-