# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3207
_____

Rachel Clay

*Plaintiff - Appellant*

v.

Credit Bureau Enterprises, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo
_____

Submitted: December 19, 2013
Filed: June 6, 2014
_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Rachel Clay brought suit against her employer, Credit Bureau Enterprises, Inc.
(CBE), under 42 U.S.C. § 1981, alleging claims of race discrimination, hostile work

environment, retaliation, and constructive discharge. We affirm the district court's[1] grant of summary judgment in favor of CBE on each of Clay's claims.

## I. Background

CBE is an Iowa corporation that performs debt-collection services for various industries and organizations. Clay is an African-American female. She began working for CBE in March 2005 as a front line collector. Shortly thereafter, she transferred to the position of partial payment administration collector and then to the position of quality control administrative representative. Clay alleged that she had applied for five promotions at CBE from January 2006 to January 2007, but that CBE did not hire her to fill any of those positions.

CBE employees were subject to four different levels of disciplinary action: coaching, verbal warning, written warning, and suspension. From March 2005 until Clay resigned for "personal reasons" on February 5, 2008, Clay received six coachings and one verbal warning. CBE's records show that Clay was not formally disciplined during the year preceding her resignation.

Clay filed this action on March 1, 2011. Because claims brought under § 1981 are subject to a four-year statute of limitations, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004), Clay's claims must have arisen on or after March 1, 2007, in order to be timely.

_____

[1]The Honorable Jon Stuart Scoles, Chief United States Magistrate Judge for the Northern District of Iowa, to whom the case was submitted by consent of the parties pursuant to 28 U.S.C. § 636(c).

In support of her hostile work environment claim, Clay cited more than thirty incidents, twelve of which occurred within the limitations period. Clay alleged that the following twelve incidents occurred after March 1, 2007:

- On March 12, 2007, Supervisor Kim Selberg said that she would deny Clay's request to make up time unless Clay completed a form that white employees had not been required to complete.

- On March 15, 2007, Manager Deahonne Teal disciplined Clay for a dress code violation. Similarly dressed white employees were not disciplined.

- At the end of March 2007, Clay complained to Selberg that her white co-workers received praise for their performance but Clay did not receive similar praise.

- On April 6, 2007, Selberg improperly altered Clay's time log to reflect that Clay had returned late from lunch.

- In late April 2007, a co-worker told Clay, "Congratulations! Today is the day Abraham Lincoln freed the slaves. You should be happy." Teal overheard the comment but took no action.

- At the end of April 2007, Teal refused to allow Clay to take dock time in order to care for her children on two occasions. Teal had allowed white employees to do so.

- After Clay graduated from team lead training course on July 17, 2007, CBE did not promote her to any team lead positions.

- On August 7, 2007, Teal disciplined Clay for an error Clay had made while training for a new collection process. White employees were not disciplined for similar errors.

- On August 14, 2007, Supervisor Sara Knoll disciplined Clay for making a mail delivery error. Most CBE employees had made the same error and were not disciplined.

-3-

- In November 2007, Teal allowed Clay to adjust her schedule to accommodate her child-care needs, but lectured Clay before approving the accommodation.

- In November 2007, Clay worked late. The next day, Teal told Clay, "You know there's a camera right behind your desk, right? So don't be taking anything off anyone's desk when I leave." Teal then changed CBE's policy to preclude employees from working late.

- On January 14, 2008, Vice President of Human Resources Mary Phillips repeatedly called Clay's residence and accused Clay of lying about her need for Family and Medical Leave Act (FMLA) leave, which was something Phillips did not do to white employees.

As set forth above, CBE did not record any instances of discipline during the limitations period.

The remaining incidents all occurred before March 1, 2007, and thus fell outside the limitations period. The majority of these incidents involved situations in which Clay alleged that she was treated differently than her white co-workers, either by being disciplined more harshly, by being passed over for promotions despite her qualifications, or by being denied other types of preferential treatment that white employees enjoyed. For example, Clay alleged that she received a coaching from Teal in February 2006 for wearing a pair of pants that Teal believed violated CBE's dress code. According to Clay, one of her white co-workers wore the same pants without being disciplined. Additionally, Clay alleged that on December 6, 2006, Phillips called Clay and implied that Clay was lying about her need for FMLA leave. Clay contended that Phillips did not question white employees who took FMLA leave.

The other pre-March 1, 2007, incidents involved situations in which Clay alleged that her white co-workers and supervisors made racially derogatory comments to her and other African-American employees at CBE. Specifically, Clay alleged (1)

-4-

that in May 2006, she learned that Supervisor Dave Fisher called African-American Supervisor Sabrina Lowry a "black bitch" during an argument; (2) that she learned that Supervisor Tami Barts once told Lowry to "let up on the white girls"; (3) that Supervisor Scott Swonger overheard Clay's co-worker call her a "black bitch" during a dispute, but did not report it; (4) that Supervisor Teresa Mendenhall referred to Clay's hair as "nappy"; and (5) that she had knowledge that Supervisors Kim Postal and Jay Bracken commented that "black people had nappy hair," "black people live in the hood," and "black people get food stamps."

Clay relied on many of these thirty-plus incidents to support her race discrimination, retaliation, and constructive discharge claims. The district court granted CBE's motion for summary judgment on each of the four claims, holding that they were time barred. The district court further concluded that the claims were without merit and thus would have failed even if they had been timely.

## II. Discussion

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. Malone v. Ameren UE, 646 F.3d 512, 516 (8th Cir. 2011). We will affirm the district court's grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive a motion for summary judgment, the nonmoving party must 'substantiate h[er] allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy.'" Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003) (second alteration in original) (quoting Wilson v. Int'l Bus. Machs. Corp., 62 F.3d 237, 241 (8th Cir. 1995)).

A.  Hostile Work Environment

Clay argues that the district court erred in granting summary judgment to CBE on her hostile work environment claim.  She contends that summary judgment was improper because genuine issues of material fact exist with regard to this claim.  To address this argument, we must first decide whether we can consider the incidents that occurred before March 1, 2007, in evaluating the hostile work environment claim.

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002), the United States Supreme Court considered "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside th[e] statutory time period."[2] The Court explained that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117.  The Court thus held that a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."[3] Id. at 122. The Court indicated that acts may be part of the same unlawful employment practice

_____

[2]Although Morgan was decided in the context of Title VII claims, we have applied the principles discussed in Morgan to claims brought pursuant to § 1981. See Madison v. IBP, Inc., 330 F.3d 1051, 1061 (8th Cir. 2003) ("Because § 1981 allows for recovery for the same type of employment discrimination as Title VII, we believe that the distinction between discrete acts and hostile work environment claims should have equal effect on the respective recovery periods for the two statutes.").

[3]In Morgan, the Court distinguished claims for discrete acts (such as termination, failure to promote, or refusal to hire) from claims for hostile work environments.  536 U.S. at 114-15.  Although Morgan makes clear that time-barred discrete acts are not independently actionable, id. at 113, Morgan does not address whether such acts still can be considered as part of a hostile work environment claim. We need not decide this issue, however, because, as addressed later in this opinion, Clay's hostile work environment claim cannot survive summary judgment even if the relevant pre-March 1, 2007, discrete acts Clay cites are considered.

if they "involve[] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Id. at 120. If, however, the pre-limitations period acts have no relation to the acts within the limitations period, "or for some other reason, such as certain intervening action by the employer, [the acts are] no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts." Id. at 118.

In Rowe v. Hussmann Corp., 381 F.3d 775, 779 (8th Cir. 2004), we considered whether acts of sexual roguery that occurred before the limitations period were "part of the same actionable hostile work environment practice" as the acts that occurred within the limitations period. A comparison of the acts revealed that "it was the same harasser . . . committing the same harassing acts" both before and within the limitations period, that the employer was made aware of the harassment, and that there was no evidence of an "intervening action." Id. at 781. We thus held "as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to this action." Id.

Clay argues that all of the thirty-plus incidents described above are part of the same unlawful employment practice and thus the district court should have considered the acts that occurred before March 1, 2007. Most of those incidents, however, were not similar in "nature, frequency, and severity" to the incidents that occurred within the limitations period, in that different supervisors engaged in different types of alleged discriminatory acts. Even considering the otherwise time-barred acts that were similar to the acts that occurred within the limitations period—such as Teal disciplining Clay for a dress code violation and Phillips questioning Clay about FMLA leave—Clay has not set forth sufficient evidence to survive summary judgment on her hostile work environment claim.

To establish a claim for hostile work environment based on race, an employee must prove that "(1) [s]he is a member of a protected group; (2) [s]he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." Malone, 646 F.3d at 517. Moreover, if an employee's hostile work environment claim is based on harassment by non-supervisory co-workers, the employee must also prove that the employer "knew or should have known of the harassment and failed to take proper remedial action." Id. (quoting Tatum v. City of Berkeley, 408 F.3d 543, 550 (8th Cir. 2005)).

In order for harassment to have affected a term, condition, or privilege of employment, the harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Consideration of this element of a hostile work environment claim "includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002). "To decide whether a work environment is objectively offensive, . . . we examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 892-93 (8th Cir. 2005) (quoting Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 759 (8th Cir. 2004)). "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." Bainbridge, 378 F.3d at 759.

Taking the facts in the light most favorable to Clay, we conclude that she has not set forth sufficient evidence to show that "the harassment affected a term, condition, or privilege of her employment." The twelve incidents of alleged

harassment that occurred after March 1, 2007, as well as the similar acts that occurred before then, taken together are not sufficiently severe or pervasive to show that Clay's work environment was objectively offensive. These incidents were infrequent and involved low levels of severity. In addition, Clay has not alleged that the environment was physically threatening, nor has she set forth evidence to show that the alleged discriminatory conduct was humiliating or interfered with her work. A reasonable person thus would not perceive Clay's work environment as hostile.

Clay's hostile work environment claim is also lacking in other respects. Most of the acts Clay alleges constitute harassment do not involve the type of conduct that usually gives rise to a hostile work environment claim. See Felton v. Polles, 315 F.3d 470, 485 (5th Cir. 2002), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (concluding that the plaintiff's allegations could not constitute actionable harassment because he made no allegation of intimidation, ridicule, or insult within the actionable time period and that his allegations were more suited to his disparate treatment claim). Moreover, Clay has not supported her allegations with sufficient probative evidence, and she relies mostly on speculation and conjecture to show that the alleged harassment was race based. See Anda v. Wickes Furniture Co., Inc., 517 F.3d 526, 531 (8th Cir. 2008) ("[T]he plaintiff 'must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor.'"); Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 567-68 (8th Cir. 2000). In light of the record, we conclude that the district court did not err in granting summary judgment in favor of CBE.

### B. Constructive Discharge, Retaliation, and Discrimination

Clay argues that her claims of race discrimination, retaliation, and constructive discharge should have survived summary judgment. Clay contends that the district court erred in concluding that her race discrimination and retaliation claims were untimely because it failed to consider certain discriminatory or retaliatory conduct that

occurred after March 1, 2007. The district court, however, considered that conduct in its order denying Clay's post-judgment motions, and Clay has not set forth sufficient evidence to show a genuine issue of material fact on those claims. Furthermore, Clay concedes that her constructive discharge claim "rises and falls on [her] hostile environment claim." Having affirmed the district court's decision on the hostile work environment claim, we need not further address Clay's constructive discharge claim.

## III. Conclusion

The judgment is affirmed.

_____