# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2058

_____

Lovelle Banks

*Plaintiff - Appellant*

v.

John Deere and Company; John Deere Waterloo Works

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: April 13, 2016
Filed: July 14, 2016

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Lovelle Banks, an African American man, sued John Deere & Company and John Deere Waterloo Works (collectively, Deere), alleging race discrimination and harassment in employment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Iowa Civil Rights Act of

1965 (ICRA), Iowa Code § 216.1 et seq. The district court[1] granted summary judgment to Deere, finding Banks failed to produce sufficient evidence to support his claims. Banks appeals,[2] and we affirm.

## I.  BACKGROUND
### A.  Facts

Banks joined Deere in 2004 and by December 2007 worked his way up to his current position of machinist. Banks operates a grinder on second shift in Department 524 of Deere's Waterloo Works plant, which manufactures tractors. Dean Mullen operates the grinder on first shift, and Sharm Loy operates the grinder on third shift. Both Mullen and Loy are white. Diane Kofron, a white woman, supervised Banks at the relevant time.

Banks is a member of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (union) and is subject to a collective bargaining agreement (CBA) between the union and Deere. The CBA provided for progressive discipline administered by Deere's Labor Relations Department.

The CBA permitted Deere to impose a three-day suspension if an employee failed to work a scheduled shift. Banks received such a suspension in June 2011. The suspension was "paper only," meaning Banks never actually served the suspension, but it remained on his disciplinary record for purposes of progressive discipline.

On February 14, 2012, Banks received the next step of discipline—a two-week paper-only suspension for failing to work scheduled overtime. The next step in the

---

[1]The Honorable Jon Stuart Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), (3).

[2]We have jurisdiction under 28 U.S.C. § 1291.

disciplinary process would be a thirty-day suspension. On February 28, 2013, Deere and the union agreed that employees who failed to work scheduled overtime would receive the equivalent of a written warning rather than a three-day suspension. Although the change was retroactive, Deere did not initially correct Banks's disciplinary record, leaving the false impression Banks was subject to a thirty-day suspension for any further infraction.

On January 15, 2013, Loy, whom Banks accuses of repeatedly using racial epithets, called Deere's compliance hotline and complained Kofron was failing to address Banks's deficient performance and insubordination. In particular, Loy complained Kofron was not managing Banks's failure to set up the grinder and process parts properly. Loy also reported Banks called Kofron a "bitch" in front of her and told her to "shut the fuck up."

Deere assigned Brad Thomas from the Labor Relations Department to investigate. After speaking with Banks's co-workers, Thomas concluded Kofron was not effectively managing Banks and gave Kofron some coaching. Thomas, Kofron, and a member of Deere's human resources department also met with Banks to advise him he would face consequences if he failed to improve his performance and his attitude. Banks did not receive any progressive discipline as a result of Loy's complaint.

In March 2013, Rizah Sarajlija, a manufacturing engineer in Department 524, determined the department was "running scrap"—producing parts out of compliance with Deere's manufacturing specifications. Inspection reports indicated the problem could be caused by "swarf"—grind residue consisting of fine metal shavings—getting between the grinder and the work piece. Sarajlija concluded the part defects were consistent with a grinder operator failing to blow the swarf off the grinder fixture between parts as required by Deere procedure. Although Banks assured Kofron and

Sarajlija he was blowing off his grinder between parts, Deere inspectors tested twenty-four parts Banks produced and determined eight were defective.

On March 11, 2013, Kofron received a photograph from an inspector depicting Banks's grinder, allegedly after Banks had operated it.[3] The picture showed excessive swarf on the grinder—far more than that left by one part. Mullen reported he found the grinder in that condition before his shift. Based on the work schedule that day, Kofron determined Banks had used the grinder on the prior shift. After seeing the photograph, Sarajlija did some testing and determined four parts Banks ran during his last shift were scrap. The part defects were consistent with excessive swarf on the grinder. Kofron and Sarajlija concluded Banks had violated company work instructions by failing to blow off the grinder between every part.

On March 20, 2013, Craig Cornwell from Deere's Labor Relations Department convened a disciplinary hearing. Cornwell reviewed the photograph and inspection reports and heard live testimony from the parties involved. Banks and his union representative, noting the picture did not indicate when it was taken, denied Banks failed to blow off his grinder between parts. Cornwell nonetheless concluded there was good and just cause to discipline Banks for failing to follow work instructions and producing scrap. Because Banks's disciplinary record did not reflect the retroactive reduction of his previous suspension to a warning, Cornwell imposed a thirty-day unpaid suspension—the next disciplinary level after what the records showed was Banks's prior two-week suspension.

Banks filed a grievance challenging his suspension. At that time, Deere discovered the error in Banks's disciplinary record and determined he only should have received a two-week suspension. Deere corrected Banks's disciplinary record

---

[3]Banks admits the photograph showed the grinder assigned to him, but denies the undated photograph was taken after he used the grinder.

and reimbursed him for the pay and benefits he would have received had he not received the thirty-day unpaid suspension. Deere maintains it simply overlooked revising Banks's disciplinary record and made a "bookkeeping" error. Banks asserts the error "was a pretext for the discrimination Banks suffered."

### B.      Procedural History

On April 24, 2013, Banks filed a complaint with the Iowa Civil Rights Commission. He received a right-to-sue letter September 4, 2013. On December 2, 2013, Banks sued Deere in Iowa state court, alleging unlawful race discrimination and harassment under federal and state law. See 42 U.S.C. § 2000e-2(a)(1) (unlawful employment practices); Iowa Code § 216.16 (unfair employment practices). Deere removed the action to federal court. See 28 U.S.C. §§ 1331, 1441(a), and 1446. On January 29, 2015, Deere moved for summary judgment, which the district court granted.

The district court concluded any claims Banks sought to make based on discrete acts of race discrimination that occurred before June 29, 2012, were time-barred because Banks failed to exhaust his administrative remedies. See 42 U.S.C. § 2000e-5(e)(1); Iowa Code § 216.15(13). Banks does not appeal that conclusion, limiting his discrimination claim on appeal to only the March 2013 suspension.

With respect to that claim, the district court found that Banks's discrimination claim based on the March 2013 suspension was timely and that Banks suffered an adverse employment action, but the district court concluded Banks failed to establish the requisite inference of race discrimination. The district court further decided that even if Banks had established an inference of race discrimination, he still failed to show Deere's stated reasons for imposing discipline were merely pretextual.

With respect to Banks's race-harassment claim, the district court determined Banks failed to produce any admissible evidence to support his allegations. The

district court thus found "it unnecessary to determine whether the allegations, if accepted as true, would meet the strict standard required to establish a claim for hostile work environment." Banks timely appeals.

## II.    DISCUSSION
### A.    Standard of Review

"We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Minnesota ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co., 686 F.3d 567, 571 (8th Cir. 2012). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).

### B.    Race Discrimination

Banks first challenges the adverse judgment on his race-discrimination claim.[4] Banks has not adduced any direct evidence of discrimination, so his claim is subject to the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under McDonnell Douglas, Banks must establish a prima facie case of race discrimination by showing "(1) he was a member of a protected group; (2) he was qualified to perform the job; (3) he suffered an adverse employment

---

[4]Given the kinship between the ICRA and Title VII, see Vivian v. Madison, 601 N.W.2d 872, 873 (Iowa 1999), we, like the Iowa courts, normally "analyze ICRA claims under the same analytical framework used for Title VII claims," Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 913 n.5 (8th Cir. 2007). Taking our cue from the parties, we follow that practice here.

action; and (4) circumstances permit an inference of discrimination." Xuan Huynh v. U.S. Dep't of Transp., 794 F.3d 952, 958 (8th Cir. 2015).

If Banks establishes a prima facie case, a presumption of discrimination arises and the burden shifts to Deere to present evidence of a "legitimate, nondiscriminatory reason for" its adverse employment action. McDonnell Douglas, 411 U.S. at 802. If Deere meets that burden, the presumption disappears and Banks must prove Deere's "'proffered justification is merely a pretext for discrimination.'" Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 903 (8th Cir. 2015) (quoting Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 681 (8th Cir. 2012)).

Banks readily "concedes that his race was not the sole reason for the complained of conduct that he suffered; however, he does claim that his race was a motivating factor that played a role in" his suspension. As Banks sees it, he has met "all the required elements for a prima facie case of racial discrimination" and has created "a fact issue as to pretext." We disagree.

Even if we assume Banks ultimately suffered an adverse employment action—a point closely contested below—Banks has not adduced any evidence race "was a motivating factor" in Deere's decision to discipline Banks for running scrap. 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."). "To survive summary judgment," Banks had to "both discredit [Deere's] articulated reason [for discipline] and demonstrate the 'circumstances permit a reasonable inference of discriminatory animus.'" Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014) (en banc) (quoting Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012)). He did neither. As the district court observed, strong evidence supported Deere's conclusion that Banks failed to follow instructions and ran scrap,

and Banks has "failed to produce any evidence that the decision and resulting discipline were race-based."

Put simply, Banks speculates race was a motivating factor in his suspension, but has failed to show it. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

## C.     Race Harassment/Hostile Work Environment

Banks next argues the district court erred in concluding Banks failed to present any admissible evidence of a hostile work environment based on race. "Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) (alteration in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To prevail on his harassment claim, Banks had to "establish that (1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." Malone v. Ameren UE, 646 F.3d 512, 517 (8th Cir. 2011). "[I]f an employee's hostile work environment claim is based on harassment by non-supervisory co-workers, the employee must also prove that the employer 'knew or should have known of the harassment and failed to take proper remedial action.'" Clay v. Credit Bureau Enters., Inc., 754 F.3d 535, 540 (8th Cir. 2014) (quoting Malone, 646 F.3d at 517).

In this case, the district court, quoting Clay, 754 F.3d at 540, concluded "Banks' hostile work environment claim fail[ed] for a fundamental reason. Banks failed to present any *admissible* evidence that he was subjected to unwelcome race-based harassment, or that the alleged harassment was 'sufficiently severe or pervasive' to

create an abusive working environment." See Crews v. Monarch Fire Prot. Dist., 771 F.3d 1085, 1092 (8th Cir. 2014) ("At summary judgment, the requisite 'genuine dispute' must appear in *admissible* evidence." (quoting Fed. R. Civ. P. 56(a))); see also Fed. R. Civ. P. 56(c)(2) (allowing a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). More specifically, the district court determined, on Deere's objection, (1) the three "sworn affidavits" upon which Banks relied to show racial harassment were, in fact, "unsworn statements and emails, constituting inadmissible hearsay," and (2) Banks's citations to such statements in his sworn interrogatories were likewise "largely inadmissible hearsay." See Fed. R. Evid. 801-807; Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 480 (8th Cir. 2004) (explaining "inadmissible hearsay . . . cannot be used to avoid summary judgment").

Relying on appeal as he did in the district court on three unsworn statements from his co-workers and his related interrogatory answers, Banks argues the district court's grant of summary judgment "was error and improper." Banks avers he would have called three co-workers, Andrew Reagan, Mike Olson, and Randy Demro, at trial "to testify that they have all heard Sharm Loy refer to Banks as 'that nigger' since February 2012." In Banks's view, "[b]y referring to the [three] statements . . . as in admissible [sic] hearsay evidence the district court failed to view the record in the light most favorable to Banks and failed to afford it [sic] all reasonable influences [sic]." Banks's analysis again misses the mark.

Regardless of whether Banks's assurance that his co-workers would have testified at trial mitigates the hearsay concerns with respect to the unsworn statements, see Fed. R. Civ. P. 56(c)(2); Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012) (clarifying the key question is whether the evidence "*could* be presented at trial in an admissible form"), Banks's proffered evidence still does not satisfy Federal Rule of Civil Procedure 56, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 157-58 & nn.16-17 (1970) (noting an unsworn statement by an alleged witness did not meet the

requirements of a prior version of Rule 56(e)); Worthy v. Mich. Bell Tel. Co., 472 F. App'x 342, 344 (6th Cir. 2012) (unpublished) (explaining a "court may consider some forms of hearsay evidence in deciding a motion for summary judgment," but the evidence still must comply with Rule 56). Rule 56(c)(1)(A) provides "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

Rule 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Although Rule 56, as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements. See Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct "under penalty of perjury."

The unsworn and unattested statements purportedly from Banks's co-workers and Banks's related interrogatory answers do not meet these standards. See, e.g., Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (explaining statements that are neither "sworn . . . nor . . . made under penalty of perjury . . . cannot be considered on summary judgment"); Howell v. N.M. Dep't of Aging & Long Term Servs., 398 F. App'x 355, 359 (10th Cir. 2010) (unpublished) (concluding an "unsigned document purportedly written by" a witness was inadmissible at summary judgment to establish a hostile work environment because it was "not in the form of an affidavit or an unsworn declaration"); cf. Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (holding the trial court did not err in excluding sua sponte

two unsigned, unattested "affidavits from its consideration of . . . summary judgment"). And Banks has not explained why he could not have obtained sworn affidavits, written declarations "under penalty of perjury," or other competent evidence from his proposed witnesses. <u>See</u> Fed. R. Civ. P. 56(d).

In light of Banks's reliance on incompetent and inadmissible evidence, the district court did not err in granting summary judgment to Deere on Banks's harassment claim.[5] <u>See</u> Fed. R. Civ. P. 56(e)(3) (permitting summary judgment, if otherwise appropriate, "[i]f a party fails to properly support an assertion of fact").

**III.   CONCLUSION**
We affirm.

_____

---

[5]Like the district court, we do not reach the merits of Banks's harassment claim.