# IN THE COURT OF APPEALS OF IOWA

No. 20-0447
Filed May 26, 2021

**LANCE GORDON,**
Plaintiff-Appellant,

**vs.**

**WELLS FARGO BANK-NATIONAL ASSOCIATION (N.A.), d/b/a WELLS FARGO HOME MORTGAGE; and WELLS FARGO & COMPANY, d/b/a WELLS FARGO HOME MORTGAGE; CHRISTIE PETERSON, in her individual and professional capacity; and TAD LINCOLN, in his individual and professional capacity,**
Defendants-Appellees.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Lance Gordon appeals the district court order granting summary judgment in favor of defendants. **AFFIRMED.**

Benjamin Bergmann and Jessica Donels of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, and Christopher Stewart of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

Michael A. Giudicessi and Susan P. Elgin of Faegre Drinker Biddle & Reath LLP, Des Moines, for appellees Wells Fargo Bank, N.A., Wells Fargo & Company, and Tad Lincoln.

Kelsey J. Knowles of Belin McCormick P.C., Des Moines, for appellee Christie Peterson.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Lance Gordon appeals the district court order granting defendant Wells Fargo Bank, N.A.'s motion for summary judgment.[1] Gordon's suit alleges Well Fargo and its employees engaged in race discrimination in violation of the Iowa Civil Rights Act (ICRA) when they decided to terminate Gordon's employment with Wells Fargo. On appeal, Gordon argues (1) a material dispute of fact precluded granting the summary judgment motion; (2) the district court erred by determining Gordon's managers could not be individually sued; and (3) Gordon is entitled to recover under Iowa Code chapter 91A (2018) for the commissions he was entitled to within thirty days of his termination.

## I. Standard of Review

"We review a district court's grant of summary judgment for correction of errors at law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; Iowa R. Civ. P. 1.981(3). We review the record in the light most favorable to the nonmoving party, and give that party "every legitimate inference that can be reasonably deduced from the record." *Id.*

## II. Discrimination Claim

Gordon alleges Wells Fargo discriminated against him on the basis of race

---

[1] Gordon also appears to appeal the district court's grant of summary judgment in favor of Wells Fargo & Company, the parent company which owns Wells Fargo Bank, N.A. However, Wells Fargo & Company never employed Gordon, and Gordon does not explain on appeal how Wells Fargo & Company is liable for any alleged wrongdoing. As such, we affirm the district court's grant of summary judgment as to Wells Fargo & Company.

when it fired him from his job as a home mortgage consultant. To prevail on a race-discrimination claim under the ICRA, Gordon must show (1) he was a member of a protected group; (2) he was qualified to perform the job and was performing satisfactorily; (3) he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination. *See Johnson v. Mental Health Institute*, No. 16-1447, 2018 WL 351601, at *8 (Iowa Ct. App. Jan. 10, 2018) (McDonald, J., specially concurring) (citing *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016). There is no dispute as to the first and third elements, as Gordon is African-American and suffered an adverse employment action by being terminated. The fighting issue in this case is whether there is a genuine issue of material fact regarding the second and fourth elements, which are intertwined in this case.

Regarding the second element, we agree with the district court that the undisputed facts establish Gordon was not performing his job satisfactorily. The record shows Gordon's position at Wells Fargo required him to submit accurate and complete loan applications on behalf of potential Wells Fargo customers in order to determine whether Wells Fargo can "pre-approve" the customers for home loans. It was emphasized to Gordon during his training for the position that the failure to include all relevant information could produce negative consequences for Wells Fargo.

On July 9, 2017, Gordon completed a loan application for a husband and wife over the phone. During the phone call, the applicants informed Gordon they had an auto loan for a truck which they had acquired through Wells Fargo. Gordon erroneously left that information off the application before submitting it to Wells

Fargo's internal system for approving loans. He also failed to include the applicants' home mortgage liability in the application. As a result of these errors, the applicants improperly received a more favorable pre-approved loan based on the incorrect debt-to-income ratio reflected in the application.

As part of a routine audit, Wells Fargo's quality assurance department listened to the call between Gordon and the applicants and identified Gordon's errors on the application. An internal investigation was conducted by a separate division within Wells Fargo, and that division recommended termination. The recommendation was reviewed by Well Fargo's Quality Assurance and Employee Relations divisions, both of which concurred with the internal investigation's recommendation. Gordon was terminated in October 2017.

Gordon admitted that he made errors on the application. Nonetheless, he maintains a genuine issue of material fact exists as to whether he has shown a prima facie case of race discrimination under the ICRA. Like the district court, we agree no such question of material fact exists. Gordon did not fulfill his duties as an employee of Wells Fargo. While Gordon does not believe he should have been terminated due to his mistakes, it is not the court's place to second guess Wells Fargo's personnel decisions. *See, e.g.*, *Watkins v. City of Des Moines*, No. 2020 WL 2988546, at *7 (Iowa Ct. App. June 3, 2020) ("[O]ur court is not equipped to be a 'super personnel department that second-guesses employers' business judgment.'" (citing *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 895 (7th Cir. 2016))). Gordon has not established he was performing his work satisfactorily, so he does not meet the second element of a prima facie case for race discrimination.

While Gordon's race discrimination claim fails as a result of his inability to show satisfactory work performance, we will address the fourth element of a prima facie case (i.e., circumstances permit an inference of discrimination), as it is intertwined with Gordon's job performance.[2]  To attempt to generate a factual dispute that circumstances permit an inference of race discrimination, Gordon relies primarily on an affidavit of a former co-worker, J.R., who is white.  According to his affidavit, J.R. also worked at Wells Fargo as a home mortgage consultant before being promoted to a different position prior to leaving Wells Fargo.  J.R. asserts that, on "multiple occasions" during his time as a home mortgage consultant, he "omitted and overlooked customers' debt, income and asset information that should have been included in their loan application" and that he was negligent in doing so.  J.R. further asserts he was allowed to correct the

---

[2] As referenced above, we have approached our analysis of the prima facie case as being a four-element cause of action.  *See Johnson*, 2018 WL 351601, at *8 (McDonald, J., specially concurring).  There is also authority for approaching the prima facie case as consisting of three elements, namely (1) plaintiff is a member of a protected class, (2) plaintiff was performing the work satisfactorily, and (3) plaintiff suffered an adverse employment action.  *See Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672. N.W.2d 733, 741 n.1 (Iowa 2003).  In cases such as this, where a plaintiff offers no direct evidence of discriminatory intent, the *McDonnell Douglas* framework is invoked.  *See Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005) (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  The *McDonnell Douglas* framework requires the plaintiff to carry the burden of establishing a prima facie case of discrimination.  *Hedlund*, 930 N.W.2d at 720.  If the prima facie case is established, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its employment action.  *Id.*  If the employer meets that burden, the burden returns to the plaintiff to show the employer's proffered reason was pretextual and that unlawful discrimination was the real reason for the employment action.  *Id.*  Here, we have found Gordon did not meet the second element of his prima facie case, which would justifiably end the discussion.  However, analyzing the fourth element under *Johnson* involves much of the same discussion as would be involved in analyzing the *McDonnell Douglas* burden-shifting framework.  So, our forthcoming discussion addresses both the prima facie case and the *McDonnell Douglas* framework.

omissions and never received any negative treatment as a result.[3] So, according to Gordon's argument, Gordon and J.R. were similarly situated in that both made the same mistakes in negligently failing to include accurate asset, debt, and income information on customer's loan applications, but they were treated differently. Specifically, Gordon, the African-American employee, was terminated while J.R., the white employee, suffered no adverse employment action. Thus, Gordon argues, the circumstances permit an inference of racial discrimination, or, in the terminology of the *McDonnell Douglas* burden-shifting framework, the claim Gordon was fired for unsatisfactory job performance was pretextual and the real reason for his termination was racial discrimination.

At first glance, Gordon's argument appears compelling. However, careful consideration of the facts, including J.R.'s affidavit, negates the persuasiveness of

---

[3] In their entirety, the factual recitals in J.R.'s affidavit are:

1. I was born [in 1981], and I reside in Polk County, Iowa.
2. I am Caucasian and my skin color is white.
3. I worked at [Wells Fargo] for approximately three and a half (3 ½ years).
4. During my time working for Wells Fargo, I worked mostly as a Home Mortgage Consultant. I was later promoted to a [different position].
5. As part of my job while working as a Home Mortgage Consultant, I was responsible for obtaining debt, income and asset information from prospective customers and seeking pre-approval for them during the home mortgage buying process.
6. On multiple occasions while obtaining information regarding a prospective customers' debts, incomes and assets, I omitted and overlooked customers' debt, income and asset information that should have been included in their loan application. These omissions were not done with ill intent but rather made accidentally due to my negligence.
7. After recognizing the omissions after the customer was preapproved, I was allowed to correct the omissions on the customer's application.
8. I was never terminated or written up for failing to provide or omitting information on a loan application of a customer.
9. I left work with Wells Fargo voluntarily.
10. All of the facts expressed in this Affidavit are true and correct.

his argument. In particular, Wells Fargo's lack of knowledge of several details negates any inference of discriminatory intent.

First, as previously noted, Gordon's errors were discovered by a random quality assurance review of one of his loan application phone calls. The persons responsible for discovering Gordon's errors, investigating the errors, and making the decision to terminate Gordon's employment as a result were all employed in divisions or departments of Wells Fargo geographically distanced from Gordon's work location. There is no evidence in this record that any of the persons involved in the discovery, investigation, or resulting discipline knew Gordon or his race. With no evidence the persons making the firing decision knew Gordon's race, there is no way to infer their actions were racially motivated.

Second, lack of evidence Wells Fargo knew of J.R.'s transgressions negates any finding that J.R. and Gordon were similarly situated individuals and thus negates any inference Gordon was treated differently based on race. Gordon points out that whether individuals are similarly situated is typically an issue to be resolved by a fact-finder at trial and not by summary judgment. *See, e.g., Wyngarden v. State Judicial Branch*, No. 13-0863, 2014 WL 4230192, at *10 (Iowa Ct. App. Aug. 27, 2014). However, as the party faced with a motion supported by evidence that undisputed facts warranted summary judgment, Gordon had the obligation to produce competing evidence to generate a factual dispute. *See* Iowa R. Civ. P. 1.981(5) (requiring party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial); *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (noting summary judgment is the "put up or shut up moment in a lawsuit" when the

resisting party must show facts that generate a factual dispute for resolution at trial). Gordon has not done that. Nothing in J.R.'s affidavit or elsewhere in the record suggests Wells Fargo knew about J.R.'s omissions that are claimed to be similar to Gordon's omissions. With no evidence Wells Fargo knew of J.R.'s missteps, there is no factual dispute that J.R. is not similarly situated to Gordon. In other words, with no evidence Wells Fargo knew about J.R.'s mistakes while knowing about Gordon's, in Wells Fargo's eyes, the employees being compared were J.R., a white man with no known unsatisfactory job performance, and Gordon, an African-American man with known unsatisfactory job performance. In that light, the two employees are not similarly situated and no racial discrimination can be inferred from the decision to terminate Gordon for poor job performance, even if it turned out J.R. secretly had done the same thing.

## III. Individual Defendants

Gordon next argues the district court erred by dismissing the claims against two Wells Fargo employees, Christi Peterson, his manager, and Tad Lincoln, his second-level manager. As a preliminary matter, we note that Gordon's claims against Peterson and Lincoln are identical to the claims made against Wells Fargo. For the same reasons Gordon's claims against Wells Fargo fail, his claims against Peterson and Lincoln fail as well. Furthermore, while a plaintiff making a claim under the ICRA can recover against a supervisory employee, recovery cannot be made against an individual employee who does not have the ability to influence or control the employment action at issue. *See Vivian v. Madison*, 601 N.W.2d 872, 876–78 (Iowa 1999). Here, there is no evidence either Peterson or Lincoln had any meaningful involvement with the decision to fire Gordon. The record indicated

neither were even aware of the decision to terminate Gordon had been made until the day they received the instructions from the decision-makers to terminate him. As such, the district court properly dismissed Peterson and Lincoln as defendants.

## IV. Chapter 91A Claims

Finally, Gordon argues the district court erred by dismissing his claim for unpaid wages related to commissions on loans he was working on which were "in the pipeline" at the time of his termination. However, under Wells Fargo's policies, an employee who is terminated is only owed payment for loans which are "funded" up by the date of termination. There is no dispute that the loans "in the pipeline" were not funded at the time Gordon was terminated. As such, Gordon was not entitled to compensation for commission related to those loans. In addition, Gordon concedes his wage claim is tied to his discrimination claim, meaning if he is not able to prevail on his discrimination claim, he cannot prevail on his wage claim either. We have determined Gordon cannot prevail on his discrimination claim, so his wage claim falls with it.

## V. Conclusion

Finding no error in the district court's grant of summary judgment disposing of all Gordon's claims, we affirm.

**AFFIRMED.**